(50 South. 1.)

No. 17,300.

TABERNACLE BAPTIST CHURCH v. GREEN et al.

(March 15, 1909. Rehearing Denied June 30, 1909.)

1. FACTS.

The ancestor of defendant was pastor of the plaintiff church. Before the church had been incorporated, his congregation intrusted him with an amount to buy two lots, 13 and 14, for the church.

2. PURCHASE OF PROPERTY.

He bought the lots over 10 years ago, and after the church had been incorporated he transferred lot 14 to the church (not lot 13).

3. MEMBERS OF CHURCH EXPELLED.

The claim that the pastor Green laid to lot 13 caused dissensions among the members. A number of the members who were with Green (only a minority under his leadership) succeeded in ousting his enemies from the congregation.

4. DATION EN PAIEMENT.

The Green faction transferred as a dation en paiement lot 14 to Green, the pastor, in payment of an asserted claim of his.

5. RELIGIOUS SOCIETIES (§ 20*)—PROPERTY.

Lot 14 having been transferred to the church by Green, the pastor, it was not within the authority of the minority to surrender it to him under the guise of a dation en paiement, the consideration of which was not shown.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 20.*]

6. TITLE TO REALTY—PAROL EVIDENCE.

Lot 13 was not transferred by Green, the pastor, to the church. The contradictory oral testimony about the title is not satisfactory at best. Besides, title to realty cannot be established by oral testimony.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 85; Dec. Dig. § 56.*]

7. ADVERSE POSSESSION (§ 13*) — TITLE BY PRESCRIPTION.

There have been a number of suits among the parties. One of the results is that plaintiff has concluded itself. Besides, Green, the pastor, and his family, the defendants, have been in possession over 10 years.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65–76; Dec. Dig. § 13.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the Tabernacle Baptist Church against Samuel C. Green and others. Judgment for plaintiff in part, and defendants appeal, and plaintiff joins therein. Affirmed.

Nix & Tichenor and Clegg, Quintero & Gidiere, for appellants. Albert Voorhies and Rene C. Metoyer, for appellee.

BREAUX, C. J. Plaintiff, a church (the congregation colored), in its petition claims

title to two lots of ground in the city of New Orleans, Nos. 13 and 14.

The defendant's father, Henry Clay Green, bought these lots in 1891 from Bradish Johnson for the price of $310.

It is asserted by plaintiff that, by reason of the fact that the corporation had not been incorporated at the date the property was bought by Henry Clay Green, it was bought in his own name.

Some time after this purchase by Henry Clay Green, he transferred lot No. 14, to plaintiff corporation. He did not transfer lot No. 13.

From this time on there was dissention in the church. A majority of the congregation insisted that lot 13 belonged to the church as well as lot 14.

Henry Clay Green having departed this life a few years ago, his heirs are made parties defendants.

They in their pleading controvert plaintiff's claim, and contend that plaintiff is concluded by the plea of res judicata, also by estoppel, and that the late Henry C. Green was the owner of both the lots; that he leased the property to the plaintiff and remained the owner. The judge of the district court rendered judgment recognizing the plaintiff as owner of lot 14, but decided that lot 13 is owned by defendants. On appeal, the plaintiff joined in the appeal, and asked for an amendment of the judgment so as to recognize its right to lot 13.

The Tabernacle Baptist Church adopted a charter on the 27th day of April, 1892. By the terms of the charter, members of the board of deacons and the parson of the church were to be elected on the 3d day of May each year.

Plaintiff's complaint is. as made to appear by the pleadings and by the testimony, that at the time designated for the annual election in 1898, at which time there was loud dissension in the church for reasons before stated, the late Henry C. Green refused to call an election or to allow one to be called; that, none the less, a majority of the board of deacons called an election about that time and elected another parson, and took steps to depose the incumbent, Green.

It appears that Green did not mildly submit, but took steps to protect his tenure as parson, and also. to hold on to the property, and afterward he availed himself of the opportunity offered by willing deacons, who were entirely under his influence, to become the owner of lot No. 14, which he had previously transferred to the church, as before stated.

There is no question but that he bought this lot 14, and it may be also lot 13, for the church.

In transferring No. 14 as before mentioned, he stated in the deed that he had bought it for the account of the church, but the recital of the deed in which he transferred lot 14 is silent about 14. Henry C. Green, although in the minority, had the members expelled who had pronounced themselves against him on account of his retaining one of the lots, as they state.

One of the members of the congregation by the name of Moore remained the friend of Green and under his influence. He was subservient to the will of Green.

This man Moore and a few others and the family of Green were about all that remained of the congregation. None the less, he remained pastor, and with some determination held off the expelled members.

Moore, it seems, was an officer. He assumed to represent the plaintiff corporation in two suits for small amounts, each for less than $100, brought by the pastor, Green, against his own church.

Moore obligingly appeared and confessed judgments. In the course of time, two judgments confessed as before mentioned, and other claims of the pastor, were increased to about $900.

These amounts, also (that is, the difference between the two judgments and the $900), the man Moore acknowledged, and proceeded to satisfy the claims by making a dation en paiement to Green of lot No. 14. In that way, Green was reinstated as owner of 14, and now owned 13 and 14.

The record does not disclose that the church was indebted to the pastor for these confessed judgments or for the other amounts making up the $900. He carried things relating to the church property his own way.

This indebtedness for which the dation en paiement was made has every appearance of having been made up between the pastor, Green, on the one hand, and the members of his congregation who were his followers in all of the dissensions that had arisen in the church, on the other.

The church people before the expulsion had contributed, as shown by the minutes and the testimony of witnesses, to the church and to the satisfaction of its indebtedness at different times.

These contributions were received by the Green people, and no complete account had been rendered.

It is strange that Green, in addition to these collections, became a creditor of his own church to the amount which he claims. In other words, it is not explained why it is that Green, the pastor, became a creditor for so large an amount in the face of the fact that considerable sums were collected to meet all of the indebtedness of the church.

The inquiry naturally arose among the members, What has become of the contributions of the members?

We may as well state here that, as before mentioned, Green was the pastor, his son was the secretary toward the end of their troubles, and his daughter swore that she was the undersecretary.

It seems that they received the money in the church. It devolved upon them to give an account of what had become of this amount.

It also appears that the pastor, Green, and his family organized a private corporation of which he was the president. They were known as the "Hopeful Land Company, Limited, of New Orleans."

The charter of this corporation is dated the 23d day of the month of November, 1899.

What was the business of this corporation does not appear, except as relates to this one transaction. That was the written statement of a promise by it to sell to the church lot 14.

There was no title in this property in the Hopeful Land Company; none the less, they bound themselves absolutely to sell the property to the church on monthly installments of $5 each.

In another agreement, Green, the pastor, after he had become the owner by dation en paiement, figures as a promising vendor. He also bound himself to sell the same property to the church.

In other words, the Hopeful Land Company was to be the vendor, and at another time Green, the pastor, who had no more title than the corporation from all appearances, was to become the vendor.

These were rather loose proceedings on the part of the pastor and his corporation. It tends to throw discredit on their claim to the lot in question. The congregation or the board of deacons do not seem to have amounted to anything; it was all Green's work. They were a willing flock in his hands. His will always prevailed. He did as he pleased, and the proceedings were by Green, pastor, who chose to use the name of others for the purpose of accomplishing the end in view, which does not appear to have been entirely devoid of the selfish, if the testimony of the witnesses is to be believed.

We note that, in one of the minutes at an election held during one of the years during which he was the pastor, they elected him for

life; made him immovable in office. In subsequent years they, none the less, again elected him pastor.

There is positive testimony that the congregation paid over $400 on account of the purchase of the two lots. There is no testimony that the church owed any such amount as that which appeared in the dation en paiement.

We have concluded that, the pastor having transferred lot No. 14 to his church for which he had not paid, his heirs are bound by it, and that it was not transferred back to him by the church; that the illegally made up quorum had no authority in the premises.

He could not arbitrarily bring on the expulsion of the majority of the congregation who claimed both lots.

As to lot 13: There is no written evidence of its transfer to the church by the pastor, who had it in his name. The title after these many years must remain where it is. The oral testimony admitted is not sufficient to show conveyance of title. Besides, the plea in estoppel and the proceedings in other cases introduced in evidence, in which the pastor was on one side and a large number of the members of the congregation on the other, are of such a character as to justify us, we think, in declining to decree that the property is in the church. The pleas before mentioned cure whatever defect there is in the title to defendant to lot 13. Ten years have elapsed, during which time the pastor and his family were in possession as owners.

These pleas have not the effect claimed for them as relates to lot 14, as it was dedicated by all concerned to religious uses over 10 years ago under title.

This case is sui generis. Under the facts and circumstances it could not be anything else.

For reasons assigned, and the law and the evidence being in favor of plaintiff, the judgment appealed from is affirmed.